IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NABIL NAJAR, | ) | CASE NO. 1:19cv2377 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN NEIL TURNER, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Nabil Najar ("Petitioner" or "Najar") brings this habeas corpus action pursuant to 28 U.S.C. § 2254. Doc. 1. Najar is detained at the North Central Correctional Complex, having been found guilty by a Cuyahoga County, Ohio, Court of Common Pleas jury of two counts of rape and one count of kidnapping. *State v. Najar,* Case No. CR-17-617751-A (Cuyahoga Cty. Common Pleas Ct., filed Dec. 1, 2017). The trial court sentenced Najar to 11 years on each count, to be served concurrently, for a total of 11 years in prison. Doc. 7-1, p. 36.

On September 28, 2019, Najar filed his Petition for Writ of Habeas Corpus setting forth two grounds for relief. Doc. 1, pp. 5-7. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2. As set forth more fully below, Ground One is unexhausted and Najar voluntarily dismissed it, and Ground Two is procedurally defaulted and, alternatively, fails on the merits. Thus, the undersigned recommends that his Petition for Writ of Habeas Corpus (Doc. 1) be **DISMISSED.**

### I. Factual and Procedural Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence.

1

28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

The following summary of underlying facts is taken from the opinion of the Cuyahoga County Court of Appeals, Eighth Appellate District of Ohio:

> {¶2} The instant matter arose from events that transpired between appellant and the victim, C.W., between February and March 2017. On February 27, 2017, C.W., who has a history of alcohol and drug addiction, was dropped off at Lutheran Hospital for treatment. She did not check into the hospital at this time; rather, she walked down West 25th Street where she encountered appellant, who indicated that he could get alcohol for her.
>
> {¶3} The victim remained with appellant for the next three weeks. During this period of time, appellant continued to provide alcohol to the victim. Furthermore, appellant and two of his friends (Caleb and Kenny) sexually abused the victim. Appellant took the victim to various places during the three-week span, including a shack in a homeless camp (February 27), an abandoned house on Train Avenue (February 28), and a house on West 48th Street.
>
> {¶4} On March 19, 2017, the victim was able to call the police from the house on West 48th Street. First responders were able to locate the victim, and she was transported to MetroHealth Medical Center where she received treatment for the injuries she sustained from appellant. A rape-kit examination was also conducted.
>
> {¶5} Appellant was ultimately arrested and charged for his conduct during the three-week period.

*State v. Najar*, 2018 WL 6928285, at *1; 2018-Ohio-5348 (Oh. Ct. App. Dec. 27, 2018).

**A. Trial Court Proceedings**

On July 10, 2017, a Cuyahoga County Grand Jury issued an indictment charging Najar with nine counts of rape, R.C. 2907.02(A)(2) (Counts 1-5, 8, 9, 12, 13), one count of gross sexual imposition, R.C. 2907.05(A)(1) (Count 6), and four counts of kidnapping, R.C. 2905.01(A)(4) (Counts 7, 10, 11, 14), including a sexual motivation specification on each count. Doc. 7-1, pp. 3-7. Najar, through counsel, pleaded not guilty and the case proceeded to a jury trial. At the conclusion of the state's case, Najar moved for acquittal pursuant to Ohio Crim. R. 29 and the trial court granted his motion as to Count 8. Doc.7-1, p. 8. The jury returned a verdict of guilty on two counts of rape and one count of kidnapping with the attendant

2

specification. Doc.7-1, p. 8. Najar filed a motion for a new trial alleging juror misconduct and filed juror affidavits in support. Doc. 7-1, pp. 9-22. The trial court held a hearing on the motion and denied it. Doc. 7-2, p. 35. The trial court sentenced Najar to eleven years on each count, to be served concurrently, for a total of eleven years in prison. Doc. 7-1, p. 36. Najar was also classified as a Tier III sexual offender. Doc. 7-1, p. 36.

### B. Direct Appeal

On February 7, 2018, Najar, through new counsel, appealed to the Eighth District Court of Appeals, Cuyahoga County, Ohio. Doc. 7-1, p. 38. In his brief, he raised the following assignments of error:

> 1. The guilty verdict cannot be upheld because the Appellant received ineffective assistance of counsel thereby violating his Sixth Amendment right to counsel.
>
> 2. The guilty verdict cannot stand because the trial court was not a neutral party, thereby violating the Appellant's constitutional right.
>
> 3. The guilty verdict cannot be upheld because the evidence and testimony presented at trial did not establish the appellant guilty beyond a reasonable doubt as to Count(s) Twelve (12), Thirteen (13), and Fourteen (14).
>
> 4. The trial court erred by failing to grant the Appellant's motion for a new trial.
>
> 5. The trial court's sentence was contrary to law.

Doc. 7-1, p. 43. On December 27, 2018, the Ohio Court of Appeals affirmed the trial court's judgment. Doc. 7-1, pp. 98-128.

Najar, pro se, timely appealed to the Ohio Supreme Court. Doc. 7-1, p. 131. In his memorandum in support of jurisdiction, he asserted the following two propositions of law:

> I. Did the appellant have a Constitutional right to present witnesses in his defense.
>
> II. Did the appellant have the right to effective assistance of counsel.

Doc. 7-1, p. 132. On April 3, 2019, the Ohio Supreme Court declined to accept jurisdiction pursuant to S.Ct.Prac.R. 7.08(B)(4). Doc. 7-1, p. 171.

**C. Federal Habeas Petition**

On September 28, 2019, Najar filed a Petition for a Writ of Habeas Corpus. Doc. 1. He listed the following grounds for relief:

> **Ground One**: Petitioner was denied the ability to present witnesses in his defense, in violation of the 6th and 14th Amendment rights under the U.S. Constitution.
>
> **Ground Two**: Petitioner was denied effective assistance of counsel at trial, in violation of his 6th and 14th Amendment rights under the U.S. Constitution.

Doc. 1, pp. 5-7.

Respondent filed a Return of Writ, arguing that both Najar's grounds are procedurally defaulted due to his failure to present them at all state court levels on direct appeal. Doc. 7. Respondent also asserts that Najar had not described with specificity the factual basis supporting either of his grounds for relief in his Petition. Doc. 7, p. 6. Najar filed a Traverse. Doc. 10. Regarding Ground One, Najar argued that counsel was ineffective for failing to call six or seven people as witnesses. Doc. 10, p. 5.

Thereafter, the undersigned issued an Order finding that Najar had not sufficiently described his grounds for relief. By way of example, the undersigned pointed out that, based on the filings, it could not be determined whether Ground One is based on evidence within the trial court record. The undersigned explained that whether Ground One is based on the trial court record is relevant to the determination of whether Ground One may be procedurally defaulted, as Respondent alleged, or unexhausted. Doc. 11. Accordingly, the undersigned ordered Respondent to file the trial court transcripts and Najar to file a Notice stating with specificity the factual basis for his two grounds for relief, including describing how he believes he was denied his right to call defense witnesses. Doc. 11, p. 2.

Thereafter, Respondent filed the trial court transcripts (Doc. 12) and Najar filed a Notice describing the factual basis for his grounds for relief (Doc. 14). In his Notice, Najar stated the

4

following with respect to his two grounds for relief:

> **Ground One:** Trial counsel was ineffective for failing to call "Skinny Kenny" and "Caleb" as witnesses who could testify that Najar was innocent. Najar concedes that such a claim was not raised on direct review and states that he voluntarily dismisses this claim.
>
> **Ground Two:** Trial counsel was ineffective for failing to object to prejudicial statements made by the prosecutor at trial, to wit: that Najar had had been incarcerated for a prolonged period of time.

Doc. 14, pp. 13-14, 15.

## II. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams*, 460 F.3d at 806.

**Exhaustion.** A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see*

5

*also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts")). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural Default.** Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id*. In *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and

adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

**Merits Review.** In order to obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Under the "unreasonable application" clause, a federal habeas court

7

may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principles and standards flowing from Supreme Court precedent. *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.") (emphasis in original).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Ineffective Assistance of Counsel.** The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance of counsel claims. A petitioner must show that counsel was objectively unreasonable and a reasonable probability that, but for counsel's unreasonable failure, the result of the proceedings would have been different. *Id*., at 687-691, 694. Upon federal habeas review, there is a double layer of deference applied: to counsel, under *Strickland*, and to the state court of appeal's decision on the merits of that claim, under AEDPA. *Kelly v. Lazaroff*, 846 F.3d 819, 832 (6th Cir. 2017) (citing *Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). The *Strickland* standard also applies to an ineffective assistance of appellate counsel claim. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

### III. Analysis

**A. Najar has voluntarily dismissed Ground One.**

In Ground One, Najar argues that he was denied the ability to present witnesses in his defense. Doc. 1, p. 5. In his Notice, he explains that counsel should have called "Skinny Kenny" and "Caleb" as witnesses who could have testified that Najar was innocent. He concedes that such a claim was not raised on direct appeal. Doc. 14, p. 13. He states that he voluntarily dismisses this claim and "more than likely will seek collateral relief through the State process on this issue." Doc. 14, p. 14.

Because Ground One is based on matters outside the trial court record, it could not have been raised on direct appeal. *State v. Spaulding*, 89 N.E.3d 554, 575 (Ohio 2016) (a claim relying on matters outside the record is not appropriate on direct appeal); *Hill v. Mitchell*, 842 F.3d 910, 935 (6th Cir. 2016). And because Najar has not sought post-conviction relief, he has not presented this claim to the state courts. Therefore, it is unexhausted. *See* 28 U.S.C. § 2254 (a petitioner must fairly present his claims to the state courts before raising them in a federal

9

habeas corpus action).

Because Ground One is unexhausted, Najar's Petition is a mixed petition with exhausted and unexhausted claims. *Rhines v. Weber*, 544 U.S. 269 (2005). The Court may permit Najar to voluntarily dismiss his unexhausted claim so that it may consider his exhausted claim. *See id*. at 278 (if a petitioner presents a district court with a mixed petition containing exhausted and unexhausted claims, the court may allow the petitioner to delete the unexhausted claim and proceed with the exhausted claim); *Harris v. Lafler*, 553 F.3d 1028, 1032 (6th Cir. 2009) (permitting the habeas petitioner to abandon his unexhausted claims so that the court could consider his exhausted claims). Thus, the undersigned recommends that the Court permit Najar to voluntarily dismiss Ground One and that it proceed to consider Ground Two.

### B. Ground Two is procedurally defaulted and fails on the merits

In Ground Two, Najar argues that he was "denied effective assistance of counsel at trial, in violation of his 6th and 14th Amendment rights under the U.S. Constitution." Doc. 1, p. 7. In his Notice, he clarifies that Ground Two is based on trial counsels' failure to object when the prosecutor "inform[ed] the jury of his prolonged incarceration." Doc. 14, p. 15.[1] Respondent agues that Ground Two is procedurally defaulted because Najar did not raise this claim to the Ohio Supreme Court. Alternatively, Respondent asserts that Ground Two fails on the merits. Doc. 7, pp. 11-12.

Ground Two is procedurally defaulted. Although Najar raised this claim on direct appeal to the Ohio Court of Appeals (Doc. 7-1, pp. 57-58), he did not raise it as a reason counsel was ineffective to the Ohio Supreme Court. Rather, in his memorandum in support of jurisdiction to the Ohio Supreme Court, Najar argued that trial counsel was ineffective because counsel: failed to subpoena critical witnesses, lied to the trial court about a plea offer, permitted the state to offer

---

[1] The record reflects that Najar had two attorneys at trial. See, e.g., Doc. 12-2, p. 2 (trial transcript).

false testimony, and failed to inform the trial court that two jurors contacted counsel after the verdict, advising that the verdict had been in error. Doc. 7-1, pp. 135-136. Najar did not argue that trial counsel was ineffective for failing to object to the prosecutor's statement regarding Najar's incarceration. Accordingly, Najar procedurally defaulted this claim because he failed to raise it at all levels on direct appeal. *Williams*, 460 F.3d at 806; *O'Sullivan*, 526 U.S. at 845.

Najar argues that counsels' failure to object to the prosecutor's statement that Najar had been incarcerated was encompassed in his allegation regarding false testimony. Doc. 14, p. 14. Najar's argument fails for the simple reason that he does not dispute that he had been incarcerated, i.e., the prosecutor's statement was not false. In any event, it cannot be said that Najar "fairly presented" this claim to the Ohio Supreme Court because he did not include any factual support for it. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts).

Najar does not show cause to excuse his procedural default. To the extent that he relies on his pro se status as cause for failing to raise this claim to the Ohio Supreme Court (Doc. 14, p. 14), his argument fails. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) ("Bonilla's pro se status before the Ohio Supreme Court is insufficient to establish cause to excuse his procedural default."). Nor does Najar show a fundamental miscarriage of justice if his claim is not considered. *See Coleman*, 501 U.S. at 750. To do so he must show that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). A claim of actual innocence "requires the petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324,

11

327 (1995). Although Najar alleges that he is innocent (Doc. 14, p. 15), he has not supported his allegation with any evidence.

Alternatively, Najar's claim fails on the merits. The Ohio Court of Appeals considered his claim as follows:

> {¶13} In order to establish a claim of ineffective assistance of counsel, a defendant must prove (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Where one prong of this test is not satisfied, a reviewing court need not address the other. *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989), citing *Strickland* at 697, 466 U.S. 668, 104 S.Ct. 2052. A properly licensed attorney enjoys a presumption of competence, and the person alleging ineffective assistance of counsel has the burden of establishing the deficiency. *State v. Hamblin*, 37 Ohio St.3d 153, 155-156, 524 N.E.2d 476 (1988).
>
> {¶14} In the instant matter, appellant argues that his trial counsel provided ineffective assistance during the state's opening statement. Specifically, appellant contends that counsel's performance was deficient for failing to object to the prosecutor's assertion that he had "a prolonged period of incarceration following the period of time relevant in this case." Appellant's brief at 18.
>
> {¶15} During opening statements, the prosecutor asserted, in relevant part,
>
>> You'll hear from the officers that apprehended [appellant] on March 31[, 2017]. [The victim's 911] call was made on March 19th; [appellant] was arrested on March 31st.
>>
>> You'll also hear that at some point, [the victim] went missing again; from the period of time of June 26th to July 10th, after [appellant] had been in custody for a period of a few months.
>
> (Tr. 369.)
>
> {¶16} As an initial matter, we note that the decision of whether to object is a "tactical decision." *State v. Frierson*, 2018-Ohio-391, 105 N.E.3d 583, ¶ 25 (8th Dist.), citing *State v. Johnson*, 7th Dist. Jefferson No. 16 JE 0002, 2016-Ohio-7937, ¶ 46. "Accordingly, 'the failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel.'" *Frierson* at *id*., quoting *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 103. Furthermore, the trial court instructed the jury that opening and closing statements were not evidence and that "evidence does not include any statement of counsel made during trial." (Tr. 934.)
>
> {¶17} Nevertheless, after reviewing the record, we find no merit to appellant's

12

ineffective assistance claim. Appellant contends that based on the prosecutor's assertion that appellant "had been in custody for a period of a few months," and counsel's failure to object thereto, the jury "believed that despite the lack of credibility of the witnesses, [appellant] *must* be convicted of something, as he has been incarcerated for the prolonged period of time." (Emphasis sic.) Appellant's brief at 18-19. We disagree.

{¶18} The record reflects that appellant's ineffective assistance claim fails under the second *Strickland* prong because he cannot establish a reasonable probability that but for counsel's failure to object to the prosecutor's opening statement, the outcome at trial would have been different. As set forth in further detail in the analysis of appellant's third assignment of error, the victim testified in detail about the rape and kidnapping offenses charged in Counts 12, 13, and 14.

{¶19} Based on the foregoing analysis, appellant's first assignment of error is overruled.

*Najar*, 2018 WL 6928285, at *2-3.

Najar does not explain how he believes the Ohio Court of Appeals' decision was unreasonable. To the extent that his statements in his Notice describing his view of the evidence presented at trial could be liberally construed as a challenge to the Ohio Court of Appeals' determination that he cannot show that the outcome at trial would have been different but for counsels' alleged ineffectiveness, his challenge fails. Doc. 14, pp. 6-10 (Najar arguing that the victim was not credible, and that evidence indicated that the victim and Najar were in a consensual relationship and the victim had numerous opportunities to leave). The Ohio Court of Appeals detailed the evidence presented at trial. In addition to the victim testifying that Najar kidnapped and raped her on numerous occasions, the Ohio Court of Appeals' recitation includes, in relevant part, the following:

{¶38} The record reflects that appellant would occasionally take the victim with him to various public places during the relevant time period. For instance, appellant took the victim to the Clark Recreation Center (February 27, 2017) and St. Malachi Church to use the shower facilities. Appellant also took the victim to Scrap Mart on more than one occasion (February 28, 2017; March 2, 2017; and March 9, 2017) where he would "cash in" metal, pipes, and other items he took from abandoned houses. (Tr. 452-453.)

{¶39} The victim did try to escape from appellant and the shack in which he was keeping her. She attempted to flee on foot at nighttime, but she stepped into a "rabbit hole" and cut her foot. (Tr. 528.)

13

{¶40} When defense counsel suggested that the victim could have escaped from appellant when they separated to use the men's and women's shower facilities at St. Malachi, the victim testified that appellant "was telling people to watch [her], look over [her]." (Tr. 531.) She explained that she did not end up taking a shower at St. Malachi because she had a panic attack. (Tr. 530.)

{¶41} The victim explained why she did not scream for help or try to run away at the Clark Recreation Center or Scrap Mart: "[e]very place that we had gone to everyone seemed to know [appellant] and they were speaking in a different language and laughing, and he would tell me that if I went anywhere that there were people who would hurt me worse." (Tr. 581.) Furthermore, regarding the fact that she did not attempt to escape from appellant's captivity, the victim testified that she suffers from anxiety and an overactive central nervous system, and as a result, "[s]ometimes [she] can't walk, [her] legs get numb, [her] fingers get numb. [She] can't move." (Tr. 581.)

{¶42} The victim testified that when she left the treatment center, she had her iPad and iPhone in her backpack. She explained that her iPhone was charged, but her iPad was not. The victim used her iPhone to call her father and 911 on February 28, 2017. She also used her iPhone to call 911 on March 19, 2017, the day she was found. She did not make any other phone calls. The victim did not have access to her backpack and cell phone at all times between February and March 2017. She explained that when appellant took her to the house on West 48th Street, her bag was in the house on Train Avenue.

{¶43} Appellant also contends that the victim's testimony was contradicted by other evidence. Michael Good, appellant's neighborhood friend, testified that he saw appellant and the victim together on several occasions. Good described the behavior of appellant and the victim as "[b]oyfriend-girlfriend[.]" (Tr. 874.) Appellant argues that Good's testimony contradicts the victim's testimony that she was scared of appellant and that he was holding her against her will.

{¶45} The victim testified that she could not remember whether she told Feichtner about the cut appellant made on her wrist. However, she testified that she did show the cut to Cleveland Police Detective Richard Tusing. Detective Tusing confirmed that appellant "cut [the victim's] hand, the letter "X" on her hand." (Tr. 733.)

{¶46} The record reflects that the victim's testimony about the rape and kidnapping offenses that occurred at the West 48th Street house was supported by the testimony of Jacklin Vannoy, Feichtner, Detective Tusing, and the DNA evidence.

{¶47} First, Vannoy who is employed by the city of Cleveland as a paramedic, testified that when she first encountered the victim, the victim was able to walk with some difficulty, and "she had some old bruising down her lower extremities and some on her arms, and she looked undernourished, tired, and severe stress, emotional distress." (Tr. 389.) She explained that as soon as they got the victim into the ambulance, the victim was crying and shaking. The victim became more emotional when she started telling her story. Vannoy testified that the victim gave her account of the incident involving

> appellant as they transported her to the hospital. She explained that as they got closer to the hospital, the victim became "profusely incontinent." Vannoy opined that this was a sign that the victim had been under emotional distress and experienced some stressful event. (Tr. 393.) The victim was concerned because she did not know where appellant was. Vannoy assured her that the police and hospital security would protect her, but the victim was "very concerned about it and was crying about it." (Tr. 395.)
>
> \* \* \*
>
> {¶51} Third, Detective Tusing testified that he attempted to interview the victim on March 19, but she was "too emotionally upset" to speak with him. (Tr. 706.) He explained that the victim was shaking, crying, and appeared to be in pain. He was able to interview her on March 30. During this interview, the victim identified appellant from the photo lineup with "one hundred percent positivity." (Tr. 721.)
>
> {¶52} Fourth, Jeffrey O'Block, a DNA analyst in the Cuyahoga County Regional Forensic Science Laboratory, testified that he tested the victim's rape kit, comparing the samples collected during the rape-kit examination to a reference swab containing appellant's DNA. O'Block asserted that the victim's vaginal swabs contained a mixture of DNA from appellant and the victim. (Tr. 695.) He stated that the victim's rectal swabs contained a mixture of DNA from appellant and the victim. (Tr. 698.)

*Najar*, 2018 WL 6928285, at \*6-8. The Ohio Court of Appeals also observed, "The victim testified in detail about her substance abuse issues, the fact that she was abusing alcohol and drugs between February and March 2017, and her mental health conditions. The jury had sufficient information to judge the victim's credibility, and the credibility of each witness, and the jury 'was free to believe all, part, or none of the testimony of each witness.'" *Id*. at \*8. The court concluded, "The important aspects of the victim's testimony remained largely consistent over time, including the identity of appellant as one of her attackers and his role in the rapes and kidnapping that occurred in the West 48th Street house." *Id*.

Najar has not shown that the Ohio Court of Appeals' ruling on his ineffective assistance of counsel claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103. Ground Two fails on the merits.

15

### IV. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Najar's habeas Petition be **DISMISSED**.

Dated: February 9, 2021

*/s/Kathleen B. Burke*
Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).